UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HURTT,

    Plaintiff,

v.

Case No. 13-10133

Hon. Denise Page Hood

INTERNATIONAL SERVICES, INC.,

    Defendant.
_____/

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND
DISMISSING ACTION

**I.     BACKGROUND**

Plaintiff Robert Hurtt filed the Complaint against Defendant International Services, Inc., in this matter on January 14, 2013. **[Docket No. 1]** He later filed an Amended Complaint. **[Docket No. 25, filed July 11, 2013]** Plaintiff seeks relief on the following claims: Disability Discrimination And Failure To Accommodate (Americans With Disabilities Act) (Count I); Michigan's Persons With Disabilities Civil Rights Act (Count II); Retaliation (Americans With Disabilities Act) (Count III); Retaliation (Persons With Disabilities Civil Rights Act) (Count IV); Family And Medical Leave Act Interference (Count V); and Family And Medical Leave Act Retaliation (Count VI).

In his Complaint, Plaintiff alleged that he was an employee of the Defendant as a management/sales analyst from 2007-2010. **[Compl. ¶ 7]** He ultimately left the company "due to the extensive travel requirements, the quality of work assignments he was given, and the lack of pay and unreimbursed travel expenses." **[Id.]** Plaintiff states that in September 2011, he was recruited by his previous manager to return to the Defendant company as a Senior Business Analyst where he would travel to the location of client work places, four days a week, be at home Friday through Sunday or Saturday through Monday, and during his workweek, travel internationally. **[Compl. ¶ 8]** Plaintiff claims that he was at first reluctant to return to the company but after meeting with the owner and being guaranteed a $70,000/year "forgivable draw" plus 12% in gross sales commission, he decided to return. **[Compl. ¶ 9]**

Upon his return, Plaintiff asserts that he was given two assignments per week. However, Plaintiff claims that shortly after returning, he was "forced to endure inhumane hours and travel conditions." **[Compl. ¶ 11]** As examples, Plaintiff cites to an occasion where he flew into an airport at midnight and then had to drive a rental car two and half hours over mountainous terrain to a hotel in order to make an early morning appointment. **[Id.]** Plaintiff also cites to long hours and assignments that he had been given that had been cancelled "well before his arrival." **[Id.]**

Plaintiff contends that as a result of his working conditions, he experienced

2

"severe mental, physical, and emotional distress, including increased blood pressure." **[Compl. ¶ 12]** He also claims that he had to be prescribed sleeping pills in order to get rest; the pills caused him to get migraines the next morning. Plaintiff states that he informed the Defendant that his health was suffering and sent them copies of notes from his doctor instructing that he get the necessary rest but that his work conditions did not improve. Plaintiff asserts that in March of 2012, he attempted suicide but that after the Defendant was notified of his suicide attempt, his working conditions did not improve.

On September 1, 2012, Plaintiff claims that he submitted a psychotherapist's letter to the Defendant advising Defendant that Plaintiff "suffered from acute anxiety and depression and was not able to perform work for a five-day period, through September 5, 2012." **[Compl. ¶ 17]** Plaintiff further claims that the letter advised Defendant that he might require additional time off over the 9-12 months following receipt of the letter depending on his symptoms. On September 4, 2012, Plaintiff states that he submitted an application to the Defendant for intermittent leave under the Family Medical Leave Act for the 9-12 month period and that the leave was approved. However, Plaintiff contends that "[i]mmediately after submitting FMLA paperwork, [he] experienced retaliation" starting on September 5, 2012, when his compensation was "dramatically reduced" retroactively to September 1, 2012, as

follows:

- His annual $70,000 salary was terminated and replaced with a straight commission structure, that even under the most ideal of circumstances would have resulted in a $35,000-40,000 cut in annual compensation.
- His "forgivable draw" was terminated which resulted in an immediate debt to his employer of $22,000.
- Certain prepaid expenses were terminated and Plaintiff was expected to front 100% for travel and then submit for reimbursement.  **[Compl. ¶ 20]**

Plaintiff contends that these actions "constituted a constructive discharge" and that based on the constructive discharge, "it would not be in his best interests to return to work after his five-day FMLA leave."  **[Compl. ¶ 21-22]**

Before the Court is Defendant's Motion for Summary Judgment. **[Docket No. 43, filed January 31, 2014]** Plaintiff filed a Response to this Motion on February 19, 2014, **[Docket No. 47, 47]** and Defendant filed a Reply on March 5, 2014. **[Docket No. 48]**

II.   **ANALYSIS**

   A.   **Standard of Review**

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The presence of factual disputes will preclude granting of summary

4

judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

    **B.    Disability Discrimination Claims-Termination**

        **1.    McDonnell Douglas Burden Shifting**

Without direct evidence of disability discrimination, the burden shifting

approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) is applicable under the ADA and Michigan's PWDCRA. *Hedrick v. Western Reserve Care System,* 355 F.3d 444, 453 (6th Cir. 2004); *Peden v. City of Detroit,* 470 Mich. 195, 204-05 (2004); *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 n.3 (6th Cir. 1998). The ADA prohibits discrimination against a qualified individual "on the basis of disability." 42 U.S.C. § 12112(a).[1] A plaintiff is required to establish a *prima facie* case under the ADA by showing that: 1) he is disabled; 2) he is otherwise qualified for the position, with or without accommodation; 3) he suffered an adverse employment action; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open or the individual was replaced. *Whitfield v. Tennessee,* 639 F.3d 253, 258-59 (6th Cir. 2011).

The first issue is whether Plaintiff suffered an adverse employment action. Defendant argues that during the Labor Day weekend in 2012, Plaintiff saw his psychotherapist, Melissa Sharnowski. Ms. Sharnowski faxed Defendant a note prescribing Plaintiff to be on leave on September 4, 2012, for acute anxiety. The note specifically states that the leave ended on September 4, 2012, and that Plaintiff was

---

[1] The ADA Amendments Act of 2008 became effective January 1, 2009. Prior to this date, the ADA prohibited discrimination "because of" an individual's disability. The 2008 amendments changed the language prohibiting discrimination "on the basis" of disability.

6

released to "return to work on Wednesday, September 5, 2012, (8:00 a.m.) without restriction." (Motion, Ex. B) Plaintiff in his deposition admits that he did not return to work on September 5, 2012. (Hurtt Dep., p. 114) Plaintiff argues that he was constructively discharged by Defendant's refusal to accommodate Plaintiff with regards to work travel arrangements and because he took leave on September 4, 2012. Plaintiff claims he did not voluntarily quit when he did not show up for work on September 5, 2012. However, in his deposition, Plaintiff admits that Defendant did not interfere with his leave on September 4, 2012, and that Defendant did not tell him to come to work on that day. (Hurtt Dep., p. 112)

Based on Plaintiff's own admission in his deposition, he did not appear for work on September 5, 2012, and Defendant did not interfere with his leave on September 4, 2012. The Sixth Circuit has held that the ADA does not require that an employer accommodate an employee's request for more convenient hours. *Regan v. Faurecia Automotive Seating, Inc.,* 679 F.3d 475, 480-81 (6th Cir. 2012). A plaintiff cannot use a claim of constructive discharge to establish an adverse employment action. *Id.* The Court finds that Plaintiff cannot show a *prima facie* case of discrimination under the ADA. The disability discrimination claims under Counts I and II must be dismissed.

    **B.**     **Retaliation Claims**

Defendant moves for summary judgment on Plaintiff's retaliation claims asserting that Plaintiff cannot show he suffered adverse action and that he engaged in a protective activity. Plaintiff responds he has shown such.

The elements of a *prima facie* case of retaliation claim under the ADA and the PWDCRA retaliation claim are the same: 1) that plaintiff engaged in an activity protected; 2) that the defendant knew of this exercise of plaintiff's protected rights; 3) that defendant consequently took an employment action adverse to plaintiff; and 4) that there is a causal connection between the protected activity and the adverse employment action. *Steward v. New Chrysler,* 415 Fed. Appx. 632, 643-44 (6th Cir. Feb. 4, 2011); *Blizzard v. Marion Tech. College,* 698 F.3d 275, 288 (6th Cir. 2012). Once a *prima facie* retaliation claim is established, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Spengler v. Worthington Cylinders,* 615 F.3d 481, 492 (6th Cir. 2010). The burden then shifts back to the plaintiff to show the stated reasons were mere pretext to mask retaliation. *Id.*

Protected activities include: opposition to any unlawful employment practice, or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing in connection with an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Causation can be proven indirectly through

circumstantial evidence such as suspicious timing. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523, 525 (6th Cir. 2008). Temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim where an adverse employment action occurs very close in time after an employer learns of a protected activity. *Id*. at 525. Where the nexus is not "very close," the Sixth Circuit has declined to find a causal connection based on timing alone. *Id.* at 523. In such a case, the plaintiff must proffer additional evidence of retaliatory conduct to establish a causal connection between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 364 (6th Cir. 2001). A combination of evidence may include other employees' fear of retaliation, repeated comments regarding discipline, atmosphere where a plaintiff's activities were scrutinized more carefully than those of comparably situated employees, both black and white, more unwarranted criticism of plaintiff's work, and more frequent disciplinary writeups of plaintiff for trivial matters. *Id.*

    As noted above, Plaintiff has not shown an adverse employment action. The retaliation claims must also fail. In addition, Plaintiff has not shown he was engaged in any alleged ADA protected activity. Plaintiff seeks to use the letter from his psychiatrist to show that he was engaged in a protected activity. However, again as noted above, Plaintiff admits in his deposition that Defendant did not interfere with

his leave. In addition, the activity of taking a leave is not the type of protected activity set forth in a retaliation claim. There is no indication that Plaintiff made a complaint to anyone during that time as to Defendant's actions because Plaintiff was taking such leave. Based on the evidence submitted by both parties, the Court finds that Plaintiff has not met his burden to show a *prima facie* case of retaliation and the retaliation claims in Counts III and IV must be dismissed.

### C. FMLA INTERFERENCE

The FMLA permits eligible employees to take up to twelve weeks of unpaid leave during any 12-month period for family or medical reasons. 29 U.S.C. § 2612. The FMLA "prohibits employers from taking adverse employment actions against employees based on the employee's exercise of FMLA leave." 28 U.S.C. § 2612(a)(1); *Bryant v. Dollar General Corp.,* 528 F.3d 394, 501 (6th Cir. 2008). The burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) is applicable under the FMLA. *Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075 (E.D. Mich. 1997). Where a plaintiff lacks direct evidence of the employer's discriminatory intent, the plaintiff must first establish a *prima facie* case of adverse employment action based on a protected characteristic; then, the employer must produce a non-discriminatory reason for the action, which the plaintiff must attack by demonstrating it is pretextual under the *McDonnell Douglas* burden

shifting analysis. *Stubl*, 984 F.Supp. at 1090-1091. Courts have applied the *prima facie* requirements under Title VII and the ADA. A plaintiff must establish a *prima facie* case under the FMLA by showing:

> 1) he/she engaged in an activity protected by the FMLA;
> 2) that the exercise of his/her protected rights was known to defendant;
> 3) that defendant thereafter took an employment action adverse to the plaintiff; and
> 4) that there was a causal connection between the protected activity and the adverse employment action.

*Id.* at 1090 (citing *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)). Once the plaintiff proves a *prima facie* case, the burden shifts to the employer to "articulate some legitimate non-discriminatory reason for the employee's discharge." *Stubl*, 984 F.Supp. at 1091. Once the employer meets the burden of articulation, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reason proffered was a mere pretext. *Id.*

As stated above, Plaintiff is unable to show an adverse employment action. Because there was no adverse employment action, Plaintiff cannot make out a *prima facie* case under the FMLA and this claim must be dismissed.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[No. 43]**

is **GRANTED**.

       **IT IS FURTHER ORDERED** that this action is **DISMISSED** with prejudice.


       S/Denise Page Hood  
       Denise Page Hood  
       United States District Judge

Dated: May 30, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 30, 2014, by electronic and/or ordinary mail.

       S/LaShawn R. Saulsberry  
       Case Manager